UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC RHEINHEIMER, et al.,<br><br>Defendants. | Case No. 25-cv-08553-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 33, 35, 36, 37, 42 |

Plaintiff First National Insurance Company ("FNIC") moves for summary judgment to determine whether it has a duty to defend or indemnify defendant Eric Rheinheimer ("Rheinheimer") in a sexual assault lawsuit filed by Jane Doe (the "Underlying Action"). In FNIC's view, numerous provisions in Rheinheimer's Policy foreclose coverage, including a sexual molestation exclusion, intended acts exclusion, and limitation of coverage to only "occurrences," which it defines as "accidents". Rheinheimer contends that there is a question of fact whether the allegations in the Underlying Action amount to sexual assault. But the issue is not whether Rheinheimer is ultimately liable for sexual assault: it is whether Doe's theory of liability against Rheinheimer falls within the Policy's insuring agreement. It does not. For the additional reasons set forth below, FNIC's motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are undisputed and are construed in favor of Rheinheimer, the non-moving party. On October 16, 2021, FNIC issued a "Quality-Plus Homeowners Policy" to Rheinheimer (the "Policy"), number OA3654091. Motion for Summary Judgment ("Mot.") [Dkt. No. 33]; Declaration of Thomas Kelly Jr. ("Kelly Decl.") [Dkt. No. 33-1] ¶¶ 3–4; *see id.* Ex. A ("FNIC Policy"). Rheinheimer's Policy was effective October 16, 2021 to October 16, 2022, and

was later renewed through October 16, 2023. *See id.*

On August 30, 2024, Jane Doe filed a complaint against Rheinheimer in the Superior Court for the County of San Francisco. *See* Declaration of Sunewa Sabharwal in Opposition to Motion for Summary Judgment ("Sabharwal Decl.") [Dkt. No. 40] Ex. A ("Underlying Action") [Dkt. No. 41-1]. Doe's complaint alleges that Rheinheimer "engaged in emotional and physical abuse . . . that included multiple sexual assaults." *Id.* ¶ 10. She notes numerous instances of sexual assault, including an incident in August 2022, where she complained to Rheinheimer about a "sharp pain in her pelvis" during "consensual sex," and she "asked [Rheinheimer] to stop multiple times." *Id.* ¶ 25. According to Doe's complaint, Rheinheimer told her "he was not going to stop and continued to insert his penis into [her] vagina without her consent." *Id.* ¶ 26. The Underlying Action alleges (1) sexual battery, (2) assault, (3) battery, (4) two counts of intentional infliction of emotional distress, and (5) negligence. *See id.* ¶¶ 47–86.

On September 17, 2024, Rheinheimer "tendered his defense and indemnity of the [Underlying Action] to First National." Kelly Decl. ¶ 5. After conducting a review of his case, FNIC agreed to defend Rheinheimer, subject to a full and complete reservation of rights under the Policy. *Id.* ¶ 8; *see* Ex. F (Reservation of Rights Letter to Rheinheimer). FNIC expressly noted that while it would defend Rheinheimer in the Underlying Action, it may not have an obligation to "indemnify [him] for any damages that may be awarded against [him] in the Lawsuit" or "contribute any amounts on [his] behalf towards a settlement." *Id.* a 1. It also indicated that it "reserved the right to file a declaratory relief action to obtain the court's determination with respect to whether there is a duty to defend or indemnify [him] from any claims asserted." *Id.* at 2.

On October 7, 2025, FNIC filed a complaint in this Court, seeking a declaratory judgment that the Policy does not require a duty to defend Rheinheimer in the Underlying Action. *See* Complaint [Dkt. No. 1]. FNIC filed for summary judgment on May 20, 2026. *See* Mot. Rheinheimer filed his opposition on June 3, 2026. *See* Rheinheimer's Memorandum of Points & Authorities in Opposition to FNIC's MSJ ("Oppo.") [Dkt. No. 37]. FNIC replied on June 10, 2026. *See* FNIC's Reply Brief in Support of MSJ ("Repl.") [Dkt. No. 42]. I heard oral argument on June 24, 2026.

2

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court must draw all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* But conclusory and speculative testimony does not raise a genuine issue of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**A.    Policy Construction**

Jurisdiction in this case is based on diversity, and so construction of the Policy is governed by California law. *See Integon Nat'l Ins. Co. v. Reece*, 423 F. Supp. 3d 831, 840 (E.D. Cal. 2019). California courts interpret insurance contracts under "ordinary rules of contractual interpretation." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (quoting *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)). The "mutual intention of the parties at the time the contract is formed governs interpretation." *Palmer*, 21 Cal. 4th at 1115 (citation omitted). Courts infer intent from the "written provisions of the insurance policy." *Id.* If the "policy language is clear and explicit, it governs." *Id.* (citations omitted). But if a term is ambiguous, courts must interpret the language "to protect the objectively reasonable expectations of the insured." *Minkler*

3

*v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (2010), *opinion after certified question answered sub. nom. Minkler v. Safeco Ins. Co.*, 399 F. App'x 230 (9th Cir. 2010). For insurance contracts, "basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Id.* at 322.

### B.    Duty to Defend

Under California law, "[a]n insurer has a very broad duty to defend its insured." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). If any potential for insurance coverage exists, the duty to defend is "immediate." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 289, 295 (1993). But the "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 9 (1995).

In determining whether a duty to defend exists, the following steps are available for a court to review. First, an insured can establish potential liability by showing that the "underlying claim *may* fall within policy coverage." *Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original). The burden then shifts to the insurer to demonstrate the claim "cannot" fall within policy coverage, or that "a specific exclusion applies." *Id.*; *Minkler*, 49 Cal. 4th at 322. Only when the underlying action "can *by no conceivable theory raise a single issue which could bring it within the policy coverage*" is an insurer excused from its duty to defend. *Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original; citation omitted). This is a low bar and supports finding coverage. Insurers similarly bear the burden of "establishing that a specific [policy] exclusion" applies. *Minkler*, 49 Cal. 4th at 322. "Any doubt as to whether [the duty to defend exists] is resolved in favor of the insured." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002).

FNIC maintains that they do not have a duty to defend Rheinheimer in the Underlying Dispute for three independent reasons: (1) the Policy only provides coverage for damages caused by an "occurrence," which does not cover sexual misconduct; (2) the Policy excludes a duty to defend claims involving injuries arising out of sexual misconduct; and (3) the Policy's exclusion

4

United States District Court
Northern District of California

for injuries "expected or intended by any insured" and Section 533 of the California Insurance Code preclude coverage.  I address each issue below.

### C.    Occurrence

Rheinheimer's Policy notes:

> If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

FNIC Policy at 15 (emphasis in original).  The Policy then goes on to define "occurrence":

> 7. "*Occurrence*" means an accident, including exposure to conditions which results in:
>
> a. *bodily injury*; or
>
> b. *property damage;*
>
> during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one *occurrence*.

*Id.* at 21 (emphasis in original).

Rheinheimer highlights that the Policy defines an "occurrence" as an "accident" which, in the context of liability insurance, means "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."  Mot. at 7 (quoting *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 315 (2009)).  In other words, "[a]n intentional act is not an 'accident' within the plain meaning of the word." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290–91 (2015) (internal quotation marks omitted).  Applying this standard, FNIC maintains that "the damages alleged in the Underlying Action could not have been caused by an 'accident,' because Rheinheimer's alleged conduct was necessarily nonaccidental, as a matter of law."  Mot. at 7.

FNIC argues that "courts . . . uniformly h[o]ld that sexual molestation cannot be

accidental," focusing on two cases that support its position. *Id.* at 8. First, in *Quan v. Truck Insurance Exchange*, the California Court of Appeal considered an insurance coverage dispute arising out of a lawsuit filed against the insured by an individual who accused him of sexual assault. 67 Cal. App. 4th 583, 595 (1998). The insured's policy limited coverage to only "occurrences," which it defined as an "accident." *Id.* "To avoid the consequences of the conclusion that no 'accident' ha[d] been alleged, the insured argue[d] he might be found merely 'negligent,' or may be found to have mistakenly believed the claimant had 'consented.'" *Id.* at 596. The court disagreed. It recognized that California law construes "accident" to refer to "the nature of the insured's *conduct*, not his state of mind." *Id.* (emphasis added) (quoting *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 804 (1994)). Because the "insured's conduct alleged to have given rise to claimant's injuries [was] necessarily non-accident," given that "the conduct could not be engaged in by 'accident,'" the court held that mistaken consent or negligence did not convert instances of potential sexual assault into "accidents." *Id.*[1]

FNIC also cites *Lyons v. Fire Insurance Exchange*, 161 Cal. App. 4th 880 (2008). On the question of whether mistaken consent could qualify as an accident, the court noted:

> [Plaintiff] asserts merely his mistaken subjective belief about another person's consent. The best that can be said by [plaintiff] is that he labored under the misimpression that [the claimant] would not rebuff his advances and would consent to his overtures. However, his mental miscalculation of her state of mind simply cannot transform his intentional conduct, done with full knowledge of all the objective facts, into an accident. Regardless of his misperception of consent, [plaintiff] intended his sexual advance and the accompanying unwanted detention that was the subject of [the claimant's] claim. Hence, there was no "accident" within the scope of the policy's coverage for personal injury.

*Id.* at 889. Taken together, FNIC believes that *Quan* and *Lyons* foreclose any theory of indemnity or a duty to defend under the "occurrences" section of the Policy. Mot. at 10.

While Rheinheimer acknowledges that an "occurrence" is defined in the Policy as an

---

[1] FNIC cites other cases it believes reinforce the holding of *Quan*. Mot. at 8–10; *see Lyons v. Fire Ins. Exch.*, 161 Cal. App. 4th 880, 888 (2008) ("sexual advances . . . simply could not be an accident."); *Northland Ins. Co. v. Briones*, 81 Cal. App. 4th 796, 811 (2000) (same); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1610 (1993) (same); *Morton ex rel. Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1211 (9th Cir. 1990) (sexual misconduct "by its nature, is purposeful, not accidental"); *Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1233–34 (2015); *Shanahan v. State Farm Gen. Ins. Co.*, 193 Cal. App. 4th 780, 788 (2011).

"accident," he nevertheless argues that "whatever injures Ms. Doe alleges she suffered, reasonably viewed, *does* constitute an 'accident' within the Policy as governed by California law."  Oppo. at 9 (emphasis added).  To support his position, Rheinheimer notes many allegations in the Underlying Action's verified complaint that suggest his sexual encounters with Doe—including the August 2022 incident—were consensual:

> 25. While Plaintiff and Defendant were having consensual sex, in mid-August 2022, Plaintiff felt a sharp pain in her pelvis.  She asked Defendant to stop multiple times and told Defendant that it was hurting her.
>
> 26. Defendant told Plaintiff he was not going to stop and continued to insert his penis into Plaintiff's vagina without her consent.
>
> 27.  Plaintiff pushed Defendant with her hands multiple times in an unsuccessful attempt to get him off of her. Defendant continued to penetrate Plaintiff's vagina with his penis until he ejaculated.
>
> . . .
>
> 52. As a direct and proximate result of Defendant's conduct, Plaintiff was harmed. Plaintiff has incurred and will continue to incur damages in an amount to be proven at trial. These damages include physical injury, severe mental and emotional distress, loss of earnings, economic harm, loss of enjoyment of life, anxiety, shame, humiliation, and other damages.

Underlying Compl. ¶¶ 25–27, 52.  Because Doe noted that she and Rheinheimer "were having consensual sex" in the complaint, Rheinheimer concludes that "any injury she suffered was truly an 'accident'" as "it was not at all clear at that moment that Mr. Rheinheimer was to stop that split second – even though he did stop within seconds."  Oppo. at 2.

Rheinheimer similarly points to his own deposition testimony as evidence raising a genuine dispute of fact whether the alleged sexual assault was an "accident."  There, Rheinheimer said that "[w]henever [Doe] asked me to stop, I stopped."  Rheinheimer Dep. at 252:21.  And with respect to the August 2022 incident, Rheinheimer testified that he took Doe's comment to mean "there's some chafing, please finish up quickly as opposed to trying to make the session last longer."  *Id.* at 255:10–14.  Accordingly, Rheinheimer "proceeded to finish up in the next few seconds, and [he] thought [they] were done with it until she complained to [him] about it later."  *Id.* at 255:14–17.  Taken together, Rheinheimer believes this evidence can at least *plausibly* fall

under the definition of "occurrence" and trigger the duty to defend.

Rheinheimer appears to conflate the merits of his defense to the Underlying Action with the issue in this case: one of liability and an insurer's duty to defend. The latter requires a court to consider "the nature of the insured's *conduct*, not his state of mind." *Quan*, 67 Cal. App. 4th at 596 (emphasis added). Like in *Quan* and *Lyons*, the conduct alleged by Doe in the Underlying Action clearly involves *intentional* and *voluntary* sexual conduct that—even under Rheinheimer's account—cannot reasonably be considered an "accident" within the meaning of the Policy. Rheinheimer has not provided any case that supports his position. Instead, he reiterates that insurance policies must be read liberally in favor of coverage. Oppo. at 7. That may be true. But even when construing all facts in favor of Rheinheimer and reading the Policy liberally, no reasonable avenue exists for Rheinheimer to suggest the alleged conduct in the Underlying Action was an accident. Accordingly, FNIC's motion for summary judgment is GRANTED.[2]

### D.   Exclusions

"[W]hen an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded." *Waller*, 11 Cal. 4th at 16. Because I find that no duty to defend arises from the Policy's operative language—limited to only "occurrence[s]"—I need not address whether the Policy's exclusions apply. But for completeness, I alternatively find that summary judgment against Rheinheimer is appropriate under the "Sexual Molestation Exclusion" and "Intended Acts Exclusion" as well.

#### 1.   Sexual Molestation Exclusion

FNIC invokes the Policy's "Sexual Molestation Exclusion" as a "separate and independent basis for a finding of no potential coverage for the claims asserted in the Underlying Action."

---

[2] While Rheinheimer does not make this argument, I also note that the Underlying Action pleading a theory of negligence does not independently create potential for coverage. As *Gonzalez* makes clear, while "[i]t is common to hear the argument that if the underlying complaint alleges negligence, there must be a duty to defend," that is "not necessarily true." 234 Cal. App. 4th at 1233. Indeed, "California law and applicable precedents do not allow the recharacterization of such clearly intentional and willful sexual misconduct as merely negligent or nonwillful, so as to trigger insurance coverage." *Coit Drapery*, 14 Cal. App. 4th at 1603; *see also Safeco Ins. Co. of Ill. v. Woodley*, 2023 WL 9316293, at *22 (C.D. Cal. Dec. 20, 2023) (finding that because all of the causes of action were based on sexual assault, all of the claims—including negligence—arose out of the assault, and thus excluded under the Policy).

United States District Court
Northern District of California

Mot. at 10.  That exclusion precludes coverage for any injury "arising out of physical or mental abuse, sexual molestation or sexual harassment."  FNIC Policy at 15.

FNIC argues that this exclusion must be "interpreted broadly," as California courts have understood "arising out of" to "connote[] only a *minimal* causal connection or incidental relationship."  Mot. at 11 (emphasis added) (quoting *Acceptance Ins. Co. v. Syufy Enterps.*, 69 Cal. App. 4th 321, 328 (1999)); *see Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985); *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 503-04 (1993)).  Moreover, FNIC cites numerous cases that "repeatedly upheld the Sexual Molestation Exclusion as unambiguous and enforceable."  *Id.*[3]

Rheinheimer responds that "[c]onstruing the coverage provisions broadly and the exclusions narrowly – and resolving all conflicts in the evidence and inferences in the evidence in favor of Mr. Rheinheimer, the 'Sexual Molestation' Exclusion does not apply as a matter of law" to Doe's complaint.  Oppo. at 9.  In his view, "an issue of fact exists as to what actually happened during that several second interaction – and if, as a matter of law, what happened can be conclusively defined as 'sexual molestation' or 'physical or mental abuse' or 'sexual harassment.'"  *Id.*  These issues include:

> 1. In her Complaint (paragraph 25), she states that Mr. Rheinheimer and her were engaged in consensual intercourse;
>
> 2. As Mr. Rheinheimer testified in his deposition, during consensual sex, Ms. Doe said, "It's starting to hurt."
>
> 3. As Mr. Rheinheimer testified, "and to me I took that to mean there's some chafing, please finish up quickly as opposed to trying to make the session last longer.· So I proceeded to finish up in the next few seconds";
>
> 4. As Mr. Rheinheimer testified in his deposition, Ms. Doe never said to stop during sex.

[3] *See Farmer ex rel. Hansen v. Allstate Ins. Co.*, 311 F. Supp. 2d 884, 894 (C.D. Cal. 2004); *Safeco Ins. Co. of Am. v. Thomas*, 2013 U.S. Dist. LEXIS 194482 (S.D. Cal. Nov. 26, 2013); *Flores v. Amco Ins. Co.*, 2007 WL 3408255 (E.D. Cal. Nov. 14, 2007); *Atain Specialty Ins. Co. v. Armory Studios, LLC*, 2017 WL 6405616 (N.D. Cal. Dec. 15, 2017) (Donato, J.); *Liberty Mut. Fire Ins. Co. v. Shaibaz S.*, 2017 WL 2118312 (N.D. Cal. May 16, 2017) (Donato, J.); *Am. Family Mut. Ins. Co. v. Verdugo*, 691 F. App'x 387 (9th Cir. 2017); *Safeco Ins. Co. v. Woodley*, 2023 WL 9316293 (C.D. Cal. Dec. 20, 2023).

*Id.* at 10.  Accordingly, Rheinheimer frames the issue as follows:

> When a person who is participating in consensual sexual intercourse hears a cryptic and ambiguous statement from his equally willing partner that "it's starting to hurt" – by which, objectively and reasonably, she may mean any number of things including "slow down" OR "let's stop for a moment" OR "please finish as soon as you can," OR "maybe we should stop" OR "stop"; and on hearing her statement "it's starting to hurt," thinking she is talking about "chafing," he "finishes" and stops altogether *within several seconds* – does his action of finishing and ending sex within several seconds, *as a matter of law*, constitute "sexual harassment" or "sexual molestation" or "physical or mental abuse" within the terms of the "Sexual Molestation" Exclusion of the homeowners policy such that, *strictly construed*, the "Sexual Molestation" Exclusion conclusively applies?

*Id.*  "As best [he] can tell," Rheinheimer argues that FNIC has "cited no cases in its moving papers on the issue of whether, in light of the plaintiff's own pleading that the parties were engaged in a consensual sexual relationship and in light of the extrinsic evidence demonstrating the absence of any sexual molestation, sexual harassment or physical or mental abuse (as set forth in Mr. Rheinheimer's deposition testimony) the 'Sexual Molestation' Exclusion would or would not apply." *Id.* at 11.  He therefore believes that the exclusion does not preclude FNIC from defending him in the Underlying Action.  *See id.*

While Rheinheimer disputes that his conduct arises to sexual assault, sexual harassment, or misconduct, the question is not whether he has a valid defense to liability in the Underlying Action.  The question instead is whether the Underlying Action seeks damages that would fall within the scope of the Policy to trigger FNIC's duty to defend.  It does not.  As FNIC aptly notes, "either version of the factual dispute would result in a finding of no coverage – if Doe establishes a molestation took place, the Sexual Molestation exclusion applies to negate coverage for any damages; if Rheinheimer establishes a molestation did not occur, then there is no liability and no potential for an award of damages that could be covered by the Policy."  Repl. at 11–12.  I GRANT summary judgment independently based on the Sexual Molestation Exclusion.

### 2.    Intended Acts Exclusion

FNIC finally moves for summary judgment on the "Intended Acts Exclusion" in the Policy, which bars coverage for bodily injury "expected or intended by any insured or which is the

10

foreseeable result of an act or omission intended by any insured." FNIC Policy at 13. FNIC asserts this language "mirrors California public policy, as codified by Insurance Code section 533." Mot. at 13. That section of the Insurance Code finds insurers "not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agent or others." Cal. Ins. Code § 533. Courts have routinely held that an "intentional act exclusion [in an insurance policy] and Section 533 [should] be considered together because Section 533 is 'an implied exclusionary clause which by statute is to be read into all insurance policies.'" *Allstate Ins. Co. v. Tankovich*, 776 F. Supp. 1394, 1397 (N.D. Cal. 1991).

Here, FNIC claims that both the Intended Acts Exclusion and Section 533 bar coverage in this case because "sexual abuse and assault necessarily involve willful conduct." Mot. at 13. Nor would it cover Doe's negligence claims, FNIC argues, as both the statute and exclusion "bar coverage for any negligence claims intertwined with the victim's claims for sexual molestation." *Id.*; *see Briones*, 81 Cal. App. 4th at 811; *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1021 (1991) ("There is no such thing as negligent or even reckless sexual molestation.").

Rheinheimer did not respond to FNIC's argument. I conclude that the Intended Acts Exclusion applies. California courts treat sexual assault and molestation as inherently willful conduct for purposes of Section 533. *See Briones*, 81 Cal. App. 4th at 811; *Coit Drapery*, 14 Cal. App. 4th at 1603. That alone is sufficient to warrant judgment in FNIC's favor on this claim.

**CONCLUSION**

There are no genuine disputes of material fact in this case. The Underlying Action is not covered under Rheinheimer's Policy. FNIC's motion for summary judgment is GRANTED. The Clerk is instructed to close this case.

**IT IS SO ORDERED.**

Dated: July 7, 2026

William H. Orrick
United States District Judge

11